**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| Future Claimants' Representative,<br>Tort Claimants' Committee, and<br>Coalition of Abused Scouts for Justice,<br><br>      Petitioners,<br><br>v.<br><br>Boy Scouts of America and Delaware BSA, LLC,[1]<br><br>      Respondents. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Civil Action No. 21-392-RGA

Bankruptcy Case No. 20-10343 (LSS)

**DEBTORS' ANSWERING BRIEF IN OPPOSITION TO THE FUTURE CLAIMANTS'
REPRESENTATIVE, THE OFFICIAL COMMITTEE OF TORT CLAIMANTS, AND
THE COALITION OF ABUSED SCOUTS FOR JUSTICE'S MOTION FOR ENTRY OF
AN ORDER, PURSUANT TO 28 U.S.C. § 157(d) AND BANKRUPTCY RULE 5011(a),
WITHDRAWING THE REFERENCE OF PROCEEDINGS INVOLVING
THE ESTIMATION OF PERSONAL INJURY CLAIMS**

Dated: April 15, 2021
Wilmington, Delaware

MORRIS, NICHOLS, ARSHT &
TUNNELL LLP
Derek C. Abbott (No. 3376)
Andrew R. Remming (No. 5120)
Eric W. Moats (No. 6441)
Paige N. Topper (No. 6470)
1201 N. Market Street, 16th Floor
P.O. Box 1347
Wilmington, Delaware 19899-1347
Telephone: (302) 658-9200

WHITE & CASE LLP
Jessica C. Lauria (admitted *pro hac vice*)
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 819-8200

Michael C. Andolina (admitted *pro hac vice*)
Matthew E. Linder (admitted *pro hac vice*)
Laura E. Baccash (admitted *pro hac vice*)
Blair M. Warner (admitted *pro hac vice*)
111 South Wacker Drive, Suite 5100
Chicago, Illinois 60606
Telephone: (312) 881-5400

*COUNSEL TO THE DEBTORS AND
DEBTORS IN POSSESSION*

---

[1] The Debtors in the Chapter 11 Cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: Boy Scouts of America (6300) and Delaware BSA, LLC (4311). The Debtors' mailing address is 1325 W. Walnut Hill Ln., Irving, TX 75038.

# TABLE OF CONTENTS

I.    Preliminary Statement ................................................................................................. 1

II.   Factual Background ..................................................................................................... 3

    A.   Overview of the BSA ......................................................................................... 3

    B.   The Debtors' Chapter 11 Cases ......................................................................... 3

    C.   The Ongoing Mediation ..................................................................................... 4

    D.   The Debtors' Reorganization Plan and Trust Distribution Procedures ................. 5

    E.   The Debtors' Confirmation Scheduling Motion .................................................. 8

    F.   The Movants' Estimation Motion ....................................................................... 8

    G.   The Request to Withdraw the Reference of the Estimation Motion ...................... 8

III.  Argument .................................................................................................................... 9

    A.   Legal Standard ................................................................................................... 9

    B.   The Movants Fail to Prove Cause to Permissively Withdraw the Reference ........ 10

        1.   The Estimation Would Be a Core Proceeding .......................................... 10

        2.   The Other Cause Factors Weigh Against Withdrawal of the Reference .. 13

            *a.   Promoting Uniformity in the Bankruptcy Administration* ........... 13

            *b.   Avoiding Forum Shopping and Confusion* .................................... 14

            *c.   Conserving the Debtors' and Creditors' Resources* .................... 15

            *d.   Expediting the Bankruptcy Process* ............................................. 15

            *e.   The Request for Withdrawal is Premature* .................................... 16

            *f.   No Request Has Been Made for a Jury Trial* ................................ 16

    C.   Withdrawal is Not Mandatory ............................................................................. 16

    D.   Alternatively, the Motion Should be Denied Without Prejudice ........................... 18

        1.   At Most, Any Eventual Withdrawal Should Only Be in Part ................... 18

        2.   In Keeping with 'Historical Practice' in Such Cases, the Motion Should Now Be Denied Without Prejudice ........................................................... 20

IV.   Conclusion .................................................................................................................. 20

**CASES**

*400 Walnut Assocs., L.P. v. 4th Walnut Assocs., L.P.*,
 2015 U.S. Dist. LEXIS 10154 (E.D. Pa. Jan. 28, 2015) ........................................14

*A.H. Robins Co. v. Piccinin*,
 788 F.2d 994 (4th Cir. 1986) ........................................13, 17

*Barlow & Peek, Inc. v. Manke Truck Lines, Inc.*,
 163 B.R. 177 (D. Nev. 1993)........................................16

*Barry v. Santander Bank, N.A. (In re Liberty State Benefits of Del. Inc.)*,
 2015 U.S. Dist. LEXIS 30327 (D. Del. 2015) ........................................19

*Dershaw v. Ciardi (In re Rite Way Elec., Inc.)*,
 2017 U.S. Dist. LEXIS 23140 (E.D. Pa. Feb. 16, 2017) ........................................15

*Gecker v. Marathon Fin. Ins. Co.*,
 391 B.R. 613 (N.D. Ill. 2008) ........................................20

*Holber v. Portnoy (In re Portnoy)*,
 2017 U.S. Dist. LEXIS 114739 (E.D. Pa. July 24, 2017)........................................13, 14

*In re Cont'l Airlines*,
 138 B.R. 442 (D. Del. 1992)........................................9

*In re Dow Corning Corp.*,
 211 B.R. 545 (Bankr. E.D. Mich. 1997)........................................12

*In re Eagle-Picher Indus.*,
 1996 U.S. Dist. LEXIS 22742 (S.D. Ohio Sept. 25, 1996) ........................................11, 13

*In re G-I Holdings, Inc.*,
 323 B.R. 583 (Bankr. D.N.J. 2005) ........................................16, 17

*In re Mercury Fin. Co.*,
 249 B.R. 490 (Bankr. N.D. Ill. 2000) ........................................20

*In re N. Am. Heath Care, Inc.*,
 544 B.R. 684 (Bankr. C.D. Cal. 2016)........................................13

*In re Nw. Inst. of Psychiatry, Inc.*,
 268 B.R. 79 (E.D. Pa. 2001) ........................................16

*In re Pruitt*,
 910 F.2d 1160 (3d Cir. 1990)........................................10, 16

*In re Roman Catholic Archbishop of Portland*,
    339 B.R. 215 (Bankr. D. Or. 2006)..................................................................12

*In re Standard Insulations, Inc.*,
    138 B.R. 947 (Bankr. W.D. Mo. 1992)..........................................................16

*In re UNR Indus., Inc.*,
    45 B.R. 322 (N.D. Ill. 1984) ............................................................................17

*Karagjozi v. Bruck*,
    2017 U.S. Dist. LEXIS 151776 (D.N.J. Sept. 18, 2017) .........................10

*KB Toys, Inc. v. Upper Deck Co.*,
    2006 U.S. Dist. LEXIS 48703 (D. Del. July 17, 2006) .........................20

*Moore v. Idealese of Wilmington*,
    358 B.R. 248 (E.D.N.C. 2006)........................................................................17

*295 Corp. v. Handl-It, Inc. (In re NDEP Corp.)*,
    203 B.R. 905 (D. Del. 1996)..........................................................................10

*Nw. Inst. of Psychiatry, Inc. v. Travelers Indem. Co.*,
    272 B.R. 104 (E.D. Pa. 2001) ........................................................................14

*Official Comm. of Asbestos Claimants v. G-I Holdings, Inc.*
    *(In re G-I Holdings, Inc.)*,
    295 B.R. 211 (D.N.J. 2003) .............................................................10, 13, 18

*Official Comm. of Unsecured Creditors v. Fed. Indus. Prods.*
    *(In re IT Group, Inc.)*,
    2007 U.S. Dist. LEXIS 5719 (D. Del. Jan. 26, 2007)............................19

*Maxus Liquidating Tr. v. YPF S.A.*,
    No. 1:19-cv-01073-RGA (D. Del. Mar. 23, 2020) (Andrews, J.)..........20

*Roberts v. Johns-Manville Corp.*,
    45 B.R. 823 (S.D.N.Y. 1984)........................................................................17

*SNMP Research Int'l, Inc. v. Nortel Networks, Inc. (In re Nortel Networks, Inc.)*,
    539 B.R. 704 (D. Del. 2015).....................................................................10, 19

*Stern v. Marshall*,
    564 U.S 462 (2011)..........................................................................................10

*Travelers Cas. & Sur. Co. v. Skinner Engine Co. (In re Am. Capital Equip., LLC)*,
    325 B.R. 372 (W.D. Pa. 2005).......................................................................15

# TABLE OF AUTHORITIES

## STATUTES

28 U.S.C. § 157(a) ................................................................................................................9

28 U.S.C. § 157(b)(2) ..........................................................................................................10

28 U.S.C. § 157(b)(2)(B) .....................................................................................................11

28 U.S.C. § 157(b)(3) ..........................................................................................................13

28 U.S.C. § 157(b)(5) ..........................................................................................................17

28 U.S.C. § 157(d) ...................................................................................................9, 17, 18

28 U.S.C. § 1334 ...................................................................................................................9

11 U.S.C. § 1107(a) ..............................................................................................................3

11 U.S.C. 1108 ......................................................................................................................3

## FEDERAL RULES

Fed. R. Bankr. P. 2004 ........................................................................................................14

The Boy Scouts of America (the "BSA") and its affiliate Delaware BSA, LLC (together, the "Debtors") submit this answering brief in opposition (the "Opposition") to the *Motion of the Future Claimants' Representative, the Official Committee of Tort Claimants, and the Coalition of Abused Scouts for Justice for Entry of an Order, Pursuant to 28 U.S.C. § 157(d) and Bankruptcy Rule 5011(a), Withdrawing the Reference of Proceedings Involving the Estimation of Personal Injury Claims* [D.I. 1] (the "Motion to Withdraw the Reference" or the "Motion")*,* filed by the FCR, TCC, and the Coalition[2] (collectively, the "Movants"), and respectfully represent:

## I.    PRELIMINARY STATEMENT

By the Motion, the Movants seek to withdraw the reference so this Court, instead of the Bankruptcy Court, can decide whether and how to estimate the aggregate amount of the Debtors' liability on over 80,000 sexual abuse claims.  In Movants' own words, the estimation they seek "is not intended to, and should not, determine the liquidated amount of a particular claim" since all "such individual amounts *will be determined through a . . . set of trust distribution procedures.*"  Motion at 4 n.3 (emphasis added); instead, it would help Movants formulate settlement demands and decide whether to support the Debtors' reorganization plan.  Although Movants insinuate otherwise, withdrawal is not mandatory in this context, but instead may be permitted only in limited circumstances, where the parties requesting that relief demonstrate cause.  The Movants make no such showing.  On the contrary, withdrawal would be ill-advised.

Various factors that courts consider in deciding whether to withdraw the reference all lead to this conclusion.  As an initial matter, the Estimation Motion and proceedings requested therein are "core," since they are sought for purposes of confirming a bankruptcy plan, and fall within the regular purview of the Bankruptcy Court.  Additionally, concerns of judicial economy,

---

[2] Capitalized terms used but not yet defined have the meanings later set forth herein.  Capitalized terms used but not defined herein have the meanings set forth in the Plan.

conserving the parties' resources, discouraging forum shopping, and promoting an expedient resolution of the bankruptcy cases—which will in turn, promote prompt payments to claimants—all weigh in favor of keeping proceedings centralized before the Bankruptcy Court. The current posture of the bankruptcy proceedings underscores this, as the Debtors are in the middle of prosecuting their disclosure statement and reorganization plan, are requesting their own estimation proceedings in connection with confirmation, and are seeking to conclude the bankruptcy cases by the end of summer. That timeline would be frustrated, to say the least, if Movants were granted the relief they now seek.

Even if Movants could persuade this Court that withdrawal could ever be appropriate, now is not that time. There are more productive ways to handle this dispute. For example, the Court could deny the Motion without prejudice, allowing Movants to re-raise their request before any final hearing on the estimation, should that ever materialize. Or the Court could allow the Bankruptcy Court to rule on the Estimation Motion, which, among other things, poses a threshold question of whether the requested estimation is even appropriate, and if denied, would obviate the need for this Court's involvement. Or the Court could direct the Bankruptcy Court to prepare findings of fact and conclusions of law on select issues. This Court could even provide for a joint hearing on the ultimate estimation, to the extent it presents any non-core issues and parties continue to withhold consent to final rulings from the Bankruptcy Court.

In sum, there is no need to withdraw the reference, and certainly not at this stage. To be sure, the Movants, who are the ones requesting this estimation, are not asking to withdraw the reference to safeguard their rights to a jury trial or to a decision by an Article III court. The Motion is a thinly-veiled litigation tactic, designed to provide leverage in ongoing negotiations regarding the Debtors' reorganization plan. It is a distraction, brought at a time when the parties'

need to remain focused is paramount.  The Motion should be denied.

## II.  FACTUAL BACKGROUND

### A.  Overview of the BSA

The BSA is a non-profit organization that supports and supervises youth Scouting programs throughout the country.  Although the BSA is a Debtor in the Chapter 11 Cases, it is supported in its charitable mission by a number of non-debtor entities, including the Local Councils and certain Chartered Organizations.  Local Councils serve the primary functions of recruiting and overseeing Chartered Organizations, while the Chartered Organizations operate, support, or sponsor Scouting units.

Although the Local Councils are largely financially independent from the BSA, one area of overlap is general insurance liability coverage. Many of the BSA's policies are subject to the rights of co-insured non-debtors, like Local Councils. *See* DS at 42 & n.61.   As of the Petition Date, the BSA was a defendant in numerous lawsuits related to historical abuse in its programs.  In light of changes in statutes of limitations, which led to a sharp increase in the number of claims asserted against the BSA, the BSA recognized that it would need to structure a settlement around a plan of reorganization that provides for channeling injunctions with respect to both current and potential future abuse claims.  DS at 45.

### B.  The Debtors' Chapter 11 Cases

To that end, the Debtors commenced their chapter 11 cases (the "Chapter 11 Cases") in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") on February 18, 2020 (the "Petition Date").  The Debtors continue to operate their non-profit organization as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  The Chapter 11 Cases are being jointly administered for procedural purposes.

On March 5, 2020, the United States Trustee for the District of Delaware appointed an official committee of tort claimants (the "TCC") and an official committee of unsecured creditors (the "Creditors' Committee"). On April 24, 2020, the Bankruptcy Court appointed James L. Patton, Jr. as the legal representative of future abuse claimants (the "Future Claimants' Representative" or "FCR"). On July 24, 2020, the Coalition of Abused Scouts for Justice (the "Coalition") filed a notice of appearance in the Chapter 11 Cases. The Coalition includes tens of thousands of sexual abuse survivor claimants who have signed affirmative consent forms to be part of the Coalition. No trustee has been appointed in the Chapter 11 Cases.

On May 26, 2020, the Bankruptcy Court entered an order [Bankr. D.I. 695] (the "Bar Date Order") establishing certain deadlines and procedures associated with the filing of proofs of claim in the Chapter 11 Cases. Pursuant to the Bar Date Order, the Bankruptcy Court established November 16, 2020 as the deadline by which sexual abuse survivor proofs of claim must be filed. Approximately 82,500 non-duplicative abuse claims were filed by the Bar Date. The Debtors and other parties are deeply engaged in the process of analyzing those claims.

Following the Bar Date, certain of the Debtors' insurers filed *Hartford and Century's Motion for an Order (I) Authorizing Certain Rule 2004 Discovery and (II) Granting Leave from Local Rule 3007-1(f) to Permit the Filing of Substantive Omnibus Objections* [Bankr. D.I. 1972] (the "Insurers' 2004 Motion"), which, among other things, seeks discovery on a sampling of persons who filed abuse claims in the Chapter 11 Cases. The Insurers' 2004 Motion remains pending and was even reurged as recently as this week. DS at 66–69; A0365 (Tr. of Status Conf. Hr'g. at 30:7–22 (Apr. 12, 2021)).

C. **The Ongoing Mediation**

Ongoing in support of the Chapter 11 proceedings is a complex and highly involved

mediation process. On the Petition Date, the Debtors filed a motion requesting that the Bankruptcy Court enter an order appointing a mediator to mediate any and all issues related to the comprehensive resolution of claims, and referring such matters to mandatory mediation. Bankr. D.I. 17. On June 9, 2020, the Bankruptcy Court entered an order appointing The Honorable Kevin Carey, Paul Finn, and Timothy Gallagher as mediators. Bankr. D.I. 812.

There are currently 26 mediation parties, and the Debtors are determined to negotiate a timely resolution of the Chapter 11 Cases because "progress needs to be made. Victims need to be compensated appropriately and the Boy Scouts' mission needs to continue." A0320 (Tr. of Omnibus Hr'g. at 48:24–49:7 (Mar. 17, 2021)). Before recent full-day mediation sessions, the Bankruptcy Court reminded the parties to "make good use of the mediators and the mediation session." A0334–35 (Tr. of Omnibus Hr'g. at 63:23–64:3 (Mar. 17, 2021)). Those mediation sessions yielded significant momentum, and the Debtors are committed to making more progress over the coming weeks and months. The Debtors have faith that the mediation will continue to be productive, and the mediators concur, having stated that they "are confident that the Mediation will foster additional constructive discussions between and among the Debtors and other Mediation Parties" and that they "do not consider the Mediation to be closed." First Mediators' Report at 2 [Bankr. D.I. 2292].

### D.    The Debtors' Reorganization Plan and Trust Distribution Procedures

On March 1, 2021, the Debtors filed their *Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC* [Bankr. D.I. 2293] and the *Disclosure Statement for the Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC* [Bankr. D.I. 2294]. Then, on April 13, 2021, the Debtors filed their *Second Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA,*

*LLC* [Bankr. D.I. 2592] (the "Plan") and *Disclosure Statement for the Second Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC* [D.I. 2594] (the "Disclosure Statement" or ("DS")).

As described in more detail in the Plan and Disclosure Statement, the primary purposes of the Plan are to (1) provide holders of abuse claims with an equitable, streamlined, and certain process by which they may obtain compensation, by channeling the abuse claims asserted against the Debtors and certain other protected parties, including the Local Councils, Contributing Chartered Organizations, and contributing insurers, to a trust pursuant to section 105(a) of the Bankruptcy Code, and (2) allow the Debtors, as Reorganized BSA, to emerge from the Chapter 11 Cases to continue the BSA's vital, congressionally–chartered mission.

The Plan provides for two paths to reorganize the Debtors. The first is a "Global Resolution Plan," which provides the framework for global resolution of holders of Direct Abuse Claims against the Debtors, Local Councils, Contributing Chartered Organizations, and settling insurance companies, in exchange for contributions by such parties to a trust (the "Settlement Trust") for the benefit of abuse survivors, including the contribution of substantial insurance assets. If the holders of abuse claims do not provide a sufficient number of votes to accept the Plan (or the Bankruptcy Court otherwise finds that the Global Resolution Plan is not confirmable), the Debtors will seek confirmation of the back-up path, the "BSA Toggle Plan."

The BSA Toggle Plan provides for the resolution claims against only the Debtors. In both scenarios, however, abuse claims against the BSA will be "channeled" to the Settlement Trust which shall have the exclusive responsibility for processing, liquidating, and paying abuse claims. On the effective date of the Plan, the Settlement Trust will receive certain contributions from the BSA, and if applicable, the Local Councils, Contributing Chartered Organizations, and

6

any settling insurance companies, which will be used to resolve abuse claims in accordance with the Settlement Trust documents, including, without limitation, the Trust Agreement and the Trust Distribution Procedures. The Trust Distribution Procedures establish a method for resolving abuse claims, set the process by which abuse claims will be reviewed, and specify liquidated values for compensable claims based on the underlying abuse. The Trust Distribution Procedures are designed to permit the Settlement Trustee to provide substantially similar treatment to holders of legally valid and factually supported, similar abuse claims. *See* Plan art. IV.

The Plan also contemplates an estimation by the Bankruptcy Court of the Debtors' aggregate liabilities for Direct Abuse Claims for purposes of and in connection with confirmation. *See* Plan art. V.T. The Debtors' proposed estimation will, among other things, provide a basis for the Bankruptcy Court and the parties to assess the value of the Direct Abuse Claims and whether the settlements proposed in the Plan, including Insurance Settlement Agreements and the Abuse Claims Settlement, should be approved as compromises that are fair, reasonable, and in the best interests of the estate with respect to disputed claims, disputed liabilities, and disputed issues. DS at 97.

The Debtors' proposed confirmation timeline contemplates conclusion of the bankruptcy by the end of summer 2021, to ensure the BSA's successful emergence from chapter 11. DS at 1. For financial and other operational reasons, it is imperative the Debtors maintain that timeline. The COVID-19 pandemic has had an unforeseen and prominent adverse effect on the Debtors' operations, including an 81% membership recruitment decline in 2020 due to school closures and social distancing guidelines. *See* DS at 180; *see also* A0286 (Tr. of Omnibus Hr'g. at 15:1–15:7 (Mar. 17, 2021) (Debtors' counsel stating: "We have talked in the past about liquidity concerns, financial concerns with the bankruptcy case. Suffice it to say, the case has

cost the debtors tens of millions of dollars, upwards of $100 million. With the litigious environment that we are finding ourselves [sic], the case is running around $10 million a month from an estate cost perspective")).

E.     **The Debtors' Confirmation Scheduling Motion**

In connection with the recent filings of the Plan and Disclosure Statement, and in further support of the timeline referenced above, the Debtors are also filing before the Bankruptcy Court the *Debtors' Motion for Entry of an Order (I) Scheduling Certain Dates and Deadlines in Connection with Confirmation of the Debtors' Plan of Reorganization, (II) Establishing Certain Protocols, and (III) Granting Related Relief* (the "Confirmation Scheduling Motion"). The Confirmation Scheduling Motion seeks to set additional dates, deadlines, and protocols in connection with confirmation and the estimation the Debtors propose be conducted in connection therewith, including a number of discovery and other pre-hearing deadlines.

F.     **The Movants' Estimation Motion**

Before the Debtors filed the Plan, Disclosure Statement, and Confirmation Scheduling Motion, on March 16, 2021, the Movants filed the Estimation Motion with the Bankruptcy Court. By that motion, the Movants seek an order authorizing an estimation of the Debtors' aggregate liability on abuse claims, and setting the parameters and a schedule for that estimation proceeding. Estimation Motion ¶ 10. Earlier today, the Debtors and other parties filed objections to the Estimation Motion. *See, e.g.*, Bankr. D.I. 2610-2615. The Estimation Motion remains pending before the Bankruptcy Court and is set for hearing on May 19, 2021, the same day as the hearing on the Disclosure Statement. *See* Bankr. D.I. 2475; DS at 1.

G.     **The Request to Withdraw the Reference of the Estimation Motion**

On March 17, 2021, the Movants filed this Motion [Bankr. D.I. 2399; D.I. 1], asking the

Court to withdraw the reference with respect to the Estimation Motion and proceedings sought therein. For the reasons set forth further below, the Court should deny the Motion, decline to withdraw the reference, and allow the Bankruptcy Court to decide the Estimation Motion alongside the various other overlapping and interrelated matters pending before it.

## III.   ARGUMENT

### A.   Legal Standard

The district courts have original jurisdiction over "all cases under title 11" and "all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(a) – (b). However, this Court refers such matters to the Bankruptcy Court. *See* 28 U.S.C. § 157(a); *Am. Standing Order of Reference*, Feb. 29, 2012 (C.J. Sleet). Once a case is referred to the bankruptcy court, the district court's authority to withdraw the reference is governed by section 157(d) of title 28, which outlines instances of mandatory and permissive withdrawal.

Section 157(d) provides in pertinent part that:

"The district court may withdraw, in whole or in part, any case or proceeding referred under this section, . . . for cause shown. The district court shall . . . withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce.

28 U.S.C. § 157(d).

Movants do not contend that withdrawal is mandatory under 11 U.S.C. § 157(d); instead, they contend this Court should grant permissive withdrawal. *See In re Cont'l Airlines*, 138 B.R. 442, 444–46 (D. Del. 1992) (explaining that mandatory withdrawal only applies when the proceeding requires substantial and material consideration of federal nonbankruptcy law). Section 157(d) permits withdrawal of the reference for "cause shown." This "cause shown" requirement has "created a presumption that Congress intended to have bankruptcy proceedings

adjudicated in bankruptcy court unless rebutted by a contravening policy." *SNMP Research Int'l v. Nortel Networks*, 539 B.R. 704, 708 (D. Del. 2015) (quotations and citation omitted). As the moving party, the Movants bear the burden to show cause overcoming that presumption. *See id.*.

Courts in the Third Circuit articulate a number of factors for the court to consider in assessing cause. One is "[w]hether the proceeding is core or non-core." *See In re G-I Holdings, Inc.*, 295 B.R. 211, 216 (D.N.J. 2003). Courts also apply the so-called "*Pruitt* factors," which ask whether withdrawal would "promot[e] uniformity in bankruptcy administration, reduc[e] forum shopping and confusion, foster[] the economical use of the debtors' and creditors' resources, and expedit[e] the bankruptcy process." *In re Pruitt*, 910 F.2d 1160, 1168 (3d Cir. 1990).

The *Pruitt* factors are sometimes referred to as "minimum standards" because they were "not designed to be exhaustive." *NDEP Corp.*, 203 B.R. 905, 908–09 (listing other factors like the nature of the proceeding, judicial economy, and whether the parties have requested a jury trial). That is not to suggest that they set a low bar. Quite the opposite, as courts have made clear, cause to withdraw the reference "will be present in only a narrow set of circumstances." *In re Pruitt*, 910 F.2d at 1171 (holding that withdrawal was improper). Applying these factors, it is clear that the Movants do not carry their burden, and the Motion should be denied accordingly.

**B.      The Movants Fail to Prove Cause to Permissively Withdraw the Reference**

**1.      The Estimation Would Be a Core Proceeding**

Section 157(b)(2) provides a list of "core" proceedings in which bankruptcy courts may enter final orders. 28 U.S.C. § 157(b)(2); *see also Stern v. Marshall*, 564 U.S. 462, 480 (2011). "Although not dispositive, traditionally the 'core' designation weighs heavily against withdrawing the reference due to the bankruptcy court's expertise in 'core' bankruptcy matters." *Karagjozi v. Bruck*, 2017 U.S. Dist. LEXIS 151776, at *7–8 (D.N.J. Sep. 18, 2017).

Core proceedings specifically include "estimation of claims and interests *for purposes of confirming a plan*." 28 U.S.C. § 157(b)(2)(B) (emphasis added). Although "the liquidation or estimation of contingent or unliquidated personal injury tort or wrongful death claims against the estate *for purposes of distribution*" are non-core proceedings, "for purposes of distribution" means that the proceeding must actually determine distributions on the claim. Acknowledging that their requested estimation is for confirmation, the Movants attempt to argue it is also for distribution, "at least in part," because it is designed "to derive an aggregate value of the Abuse Claims that will, in turn, dictate the size at plan confirmation of any post-confirmation trust for making distributions to abuse survivors." Mot. at 3, 8–9. That does not transform the plainly confirmation-related proceedings into an "estimation . . . for purposes of distribution." Movants themselves make clear the estimation will neither determine claims allowance nor distribution amounts. Accordingly, the matter is a core proceeding, properly before the Bankruptcy Court.

Other mass tort cases, like *In re Eagle-Picher Indus.*, 1996 U.S. Dist. LEXIS 22742, at *15 (S.D. Ohio Sep. 25, 1996), illustrate this point. In affirming the bankruptcy court's ruling that the proposed estimation proceeding was core, the district court reasoned that the estimation did not (1) determine the claim of any individual tort victim, (2) determine the merits of any individual asbestos claim, (3) foreclose any state law defenses, or (4) establish the amounts to be distributed to individual asbestos claimants. *Id.* at *17–18. Moreover, the district court noted that the determination of whether a claimant would recover on a claim and the amount of any recovery would be made pursuant to the confirmed plan's trust distribution procedures. *Id.* at *18. Thus, the district court held that estimation facilitated the confirmation of a plan, since the purpose of the estimation "[was] not to make distributions to asbestos claimants but to permit the formulation of a feasible plan." *Id.* at *18–19.

Here too, the Movants are seeking some indication of aggregate liability of personal injury claims but are not requesting any binding determinations regarding individual claims or ultimate distributions. The Movants' requested estimation concedes that those matters will be determined through the Trust Distribution Procedures. *See* Estimation Motion at 1 n.3.

Digging deeper into the Movants' real motives, it becomes even clearer that the estimation they seek is for plan confirmation. In the Estimation Motion, the Movants expressly state the estimation is "necessary" for the Debtors to "obtain an affirmative vote from holders of Abuse Claims." Estimation Motion ¶ 40. The Movants also raise several arguments focused on what they think is necessary for confirmation. *Id.* ¶ 32 ("Estimation of the Abuse Claims is also critical to determining whether the Proposed Plan (or any other plan) satisfies the Bankruptcy Code's confirmation requirements."); *see also id.* ¶¶ 33–35 (raising confirmation issues like if the plan is fair and equitable, the propriety of third party releases, and the best interest test). The Movants cannot seriously refute that their requested estimation is for purposes of confirmation. Therefore, it is a core proceeding, and the reference should not be withdrawn.

To try to escape this conclusion, the Movants attempt to invoke *In re Dow Corning Corp.*, 211 B.R. 545, 569 (Bankr. E.D. Mich. 1997), where the bankruptcy court observed in dicta that estimation of personal injury claims for purposes of confirmation could theoretically "create the result that the estimation was for purposes of distribution as well"—before denying both of the estimation motions before it. The Movants then cite to *In re Roman Catholic Archbishop of Portland*, 339 B.R. 215, 219–20 (Bankr. D. Or. 2006), where the bankruptcy court held that an estimation proposed by the debtor was for purposes of distribution because it would decide the amount to be set aside for payment of tort claims, which the debtor's plan required be paid in full. This meant that if the estimation turned out to be too low, insufficient amounts

12

would remain for claimants, effectively limiting their rightful distributions. *Id.*

Here, in contrast, that is not the case. The Movants' estimation will not decide what actually gets contributed to the Settlement Trust, the corpus of which is to be comprised of various assets contributed by different parties, including insurance rights, and the Plan includes no right to payment in full for abuse claims. "[T]he question of whether an estimation of aggregate liability is for purposes of distribution must be determined on a case-by-case basis," *Eagle-Picher*, 1996 U.S. Dist. LEXIS 22742 at *15, and other courts have rejected the idea that estimation to help inform the size of the Debtors' liabilities is "for purposes of distribution." *See, e.g.*, *A.H. Robins Co. v. Piccinin*, 788 F.2d 944, 1012 (4th Cir. 1986) ("estimations of the debtors' potential personal injury tort liabilities as an incident of the development plan of reorganization are core proceedings within the bankruptcy court's jurisdiction"); *In re N. Am. Heath Care, Inc.*, 544 B.R. 684, 698-90 (Bankr. C.D. Cal. 2016) (estimation to determine the total value of personal injury claims for feasibility is not an estimation for distribution).[3]

Even if this Court were to determine that the estimation would be a non-core proceeding, that would not alone decide whether withdrawal is appropriate. The additional factors must also be consulted, and those weigh against withdrawal of the reference, as explained below.

### 2. The Other Cause Factors Weigh Against Withdrawal of the Reference

#### a. *Promoting Uniformity in the Bankruptcy Administration*

Generally, the promotion of uniformity in the bankruptcy administration is most advanced by the proceeding remaining in bankruptcy court. *See In re Portnoy*, 2017 U.S. Dist. LEXIS 114739, at *14 (E.D. Pa. July 24, 2017) (keeping the proceeding in bankruptcy court

---

[3] If there is any doubt that the Estimation Motion is core, that can be left to the Bankruptcy Court. *See* 28 U.S.C. § 157(b)(3) ("The bankruptcy judge shall determine . . . whether a proceeding is a core proceeding[.]"); *G-I Holdings*, 295 B.R. at 219 ("Initially, the core/non-core determination ought to be made by the Bankruptcy Court.").

better promotes uniformity where that court became "intimately familiar with the facts, parties and issues involved" during its years-long involvement with the case); *Nw. Inst. of Psychiatry. v. Travelers Indem.*, 272 B.R. 104, 109 (E.D. Pa. 2001) ("The bankruptcy court is familiar with the parties, the factual background of the case and the legal issues involved. Therefore, this court finds no reason to disturb the present course and it declines to withdraw the reference . . . .").

Here, uniformity in the bankruptcy administration would be better promoted by keeping the Estimation Motion with the Bankruptcy Court. The Bankruptcy Court has guided the parties through these Chapter 11 Cases for over a year and will continue to hear matters related to the Debtors' Disclosure Statement, Plan, and the estimation process sought by the Debtors therein, not to mention other related matters like the Insurers' 2004 Motion. Thus, consistency in rulings across these related issues will best be achieved by keeping the reference in place.

### b. *Avoiding Forum Shopping and Confusion*

Courts should employ withdrawal judiciously "in order to prevent it from becoming just another litigation tactic for parties eager to find a way out of bankruptcy court." *400 Walnut Assocs., L.P. v. 4th Walnut Assocs., L.P.*, 2015 U.S. Dist. LEXIS 10154, at *13 (E.D. Pa. Jan. 28, 2015) (citations omitted); *see also Portnoy*, 2017 U.S. Dist. LEXIS 114739, at *15–16, 19 (E.D. Pa. July 24, 2017) (denying withdrawal to discourage forum shopping in the future).

This factor also weighs in favor of denying the Motion since the Movants have already revealed that their requested relief is less about protecting their rights to a jury trial or be heard by an Article III judge and more of an effort to gain leverage in the Mediation. *See* A0305 ((Tr. of Omnibus Hr'g. at 34:7-10 (Mar. 17, 2021) (counsel for the FCR raising the likelihood that no trial will ever take place, citing examples of estimations "in mass tort bankruptcies" that were "teed up and often it results in incentivizing and facilitating the mediation and consent, not the

opposite"); Motion at 4 (describing "a demand by Movants for increased contributions to the trust" as an anticipated consequence of the estimation)).

Although the Debtors are also interested in a consensual resolution, this Motion is not the right means for that end. An estimation before this Court would only distract from mediation, cause added complications and confusion, and otherwise jeopardize the Debtors' restructuring.

### c. Conserving the Debtors' and Creditors' Resources

The economical use of parties' resources also undercuts the Motion. *In re Am. Capital Equip., LLC*, 325 B.R. 372, 379 (W.D. Pa. 2005) (noting that it was more economical to keep the parties in one court, subject to one schedule, and before one judge, who would preside over the confirmation to interpret and apply the terms of the plan and the trust distribution procedures in the context of the proceeding sought to be withdrawn). To date, over $100 million of professional fees have accrued in this case. Every dollar spent on unnecessary litigation reduces the amount available for the Settlement Trust. If the parties were to litigate estimation before this Court, professional fees would only further increase, and significantly so. If instead the Bankruptcy Court continues presiding, resources can be preserved, given the substantial overlap with confirmation and other-wise.

### d. Expediting the Bankruptcy Process

Keeping all issues before the Bankruptcy Court will also expedite the bankruptcy process, leading to multiple benefits, including facilitating prompt payments to abuse survivors. Although the Debtors refute that any part of the Estimation Motion would need to be decided by this Court, even if it did, "[w]ithdrawing a reference will not necessarily expedite the bankruptcy administration process." *In re Rite Way Elec., Inc.*, 2017 U.S. Dist. LEXIS 23140, at *21–22 (E.D. Pa. Feb. 16, 2017) (citing "a chance that the Bankruptcy Court may have to wait for this

court to adjudicate the merits" and explaining that keeping the matter before the bankruptcy judge would "allow him to more efficiently administer the case"); *see* A0301 (Tr. of Omnibus Hr'g. at 30:17–22 (Mar. 17, 2021) ("And what concerns me more, quite frankly, is a timeframe with the District Court that has on its plate and coming up with hopefully the relaxation of -- well not hopefully, the relaxation, with possibilities of return to criminal trials, a docket that it has to prioritize. So that is a concern I have.")). Thus, this factor also weighs against withdrawal.

### e.    The Request for Withdrawal is Premature

Another factor courts consider is timing of the request, including whether it is premature. *See In re Pruitt*, 910 F.2d at 1168. As explained below, there is no reason to withdraw the reference at this time, where it is unclear whether the Estimation Motion will even be granted, what methodology will be used, and if or when the estimation hearing would actually occur. For those reasons, this factor also prevents withdrawal.

### f.    No Request Has Been Made for a Jury Trial

Yet another factor is whether there has been a request for a jury trial. Generally, a jury demand weighs in favor of granting withdrawal. *See, e.g.*, *In re Nw. Institute of Psychiatry, Inc.*, 268 B.R. 79, 84 (E.D. Pa. 2001).[4] None has been made here, nor would it be in connection with estimation. *See, e.g.*, *G-I Holdings, Inc.*, 323 B.R. at 607 ("[N]either a debtor nor its personal injury claimants have a right to jury trial in an estimation proceeding conducted under § 502(c) of the Bankruptcy Code."); *In re Standard Insulations*, 138 B.R. 947, 951 (Bankr. W.D. Mo. 1992) ("The court concludes from the statutory language that jury trials are not required for personal injury claims at the claims allowance stage"). Once again, withdrawal is not warranted.

### C.    Withdrawal is Not Mandatory

---

[4] Even with a jury demand, bankruptcy courts can still hear pretrial issues. *Barlow & Peek*, 163 B.R. at 179 (refusing withdrawal until "it is clear that a jury trial will be necessary and that the case is prepared and ready for such trial").

Having failed to show cause for permissive withdrawal, and not even attempting to argue mandatory withdrawal under 28 U.S.C. § 157(d), Movants next contend that withdrawal is effectively necessitated by 28 U.S.C. § 157(b)(5), since that provision requires personal injury claims "to be tried" before a district court. But that assumes, incorrectly, that any of the abuse claims will be "tried" through the estimation proceedings.

Section 157(b)(5) provides: "The district court shall order that personal injury tort and wrongful death claims shall be tried in the district court in which the bankruptcy case is pending, or in the district court in which the claim arose, as determined by the district court in which the bankruptcy case is pending." Movants provide no authority for the proposition that estimation proceedings, especially those contemplated here, fit within the meaning of being "tried." That is because they do not. *See A.H. Robins*, 788 F.2d at 1012 (citing *Roberts v. Johns-Manville Corp.,* 45 B.R. 823, 825–26 (S.D.N.Y. 1984) and *In re UNR Indus., Inc.*, 45 B.R. 322, 326–27 (N.D. Ill. 1984)) (explaining that those "two leading cases . . . arising out of the asbestos litigation . . . hold that estimations of the debtors' personal injury tort liabilities as an incident of . . . the development of a plan of reorganization are core proceedings within the bankruptcy court's jurisdiction and are not foreclosed by Section 157(b)(5)").

In any event, "tried" does not include pretrial proceedings. *See, e.g.*, *G-I Holdings*, 323 B.R. at 615 ("While 28 U.S.C. § 157(b)(5) requires the district court to order personal injury tort and wrongful death claims be tried in that court, § 157(b)(5) does not affect pretrial proceedings."). Although Movants try to dispute this, their efforts fall short. Movants argue— based on a single case, from outside of this Circuit, which did not even involve a motion to withdraw the reference—that all "pretrial" activities connected to the estimation, including even discovery, must be conducted in the district court. Motion at 14–15 (citing *Moore v. Idealease of*

*Wilmington*, 358 B.R. 248, 252 (E.D.N.C. 2006) (denying to refer to the bankruptcy court a suit that had never been pending before the bankruptcy court, involved no provisions of the Bankruptcy Code but instead asserted civil rights claims, and which had originally been filed in state court)). That is plainly not required, advisable here, or this Court's standard practice. No claims are going to be "tried" through the estimation or prehearing procedures.

### D. Alternatively, the Motion Should be Denied Without Prejudice

If the Court were for some reason inclined to grant withdrawal, it may do so in part under 28 U.S.C. § 157(d), and there is no need to withdraw entirely. As previously mentioned, the Bankruptcy Court should be permitted to rule on the Estimation Motion as a threshold matter, obviating the need for any ruling on withdrawal at this time. Even if there were ultimate issues to be tried by this Court, all pre-trial proceedings should be conducted by the Bankruptcy Court. Ultimately, if a final hearing on the estimation proceedings were ever to occur, limited withdrawal could be granted at that time. To be clear, the Debtors maintain no withdrawal is appropriate; but if the Court were unsure, it should deny the Motion without prejudice.

#### 1. At Most, Any Eventual Withdrawal Should Only Be in Part

The motion to withdraw is premature insofar as the Bankruptcy Court should first decide the Estimation Motion—including whether to estimate and if so, how and on what schedule. *G-I Holdings* is instructive. There, the district court denied an asbestos claimants committee's motion for withdrawal of all estimation proceedings, concluding that, "[g]iven its understanding of the facts and issues in this case, and knowledge of the chapter 11 reorganization process, the Bankruptcy Court should attempt the estimation proceeding," including resolution of two competing estimation motions, "in the first instance." *G-I Holdings*, 295 B.R. at 219 (noting that if the bankruptcy court determines the estimation proceeding is non-core, it could "recommend

the estimation method to this Court"). So too here. The Bankruptcy Court is fully equipped to decide the issues and its decision could obviate the need for this Court to do anything.

Moreover, even if the Estimation Motion were granted, withdrawal would be unnecessary for pretrial proceedings, which should be conducted by the Bankruptcy Court. This Court has "explained that even for non-core claims . . . a bankruptcy court is capable of functioning in a role similar to that of a magistrate by handling pre-trial issues." *Nortel*, 539 B.R. at 710; *In re Liberty State Benefits of Del. Inc.*, 2015 U.S. Dist. LEXIS 30327, at *10 (D. Del. 2015) (same).

Maintaining the estimation proceeding in the Bankruptcy Court for all pre-trial matters will promote judicial economy, continuing the Bankruptcy Court's well-informed oversight of the Chapter 11 Cases and preserving this Court's resources. *See In re IT Group, Inc.*, 2007 U.S. Dist. LEXIS 5719, at *5–6 (D. Del. Jan. 26, 2007) ("Courts have . . . recognized that it serves the interests of judicial economy and efficiency to keep an action in Bankruptcy Court for the resolution of pre-trial, managerial matters, even if the action will ultimately be transferred to a district court for trial."). Withdrawing the estimation proceedings, including as to pre-trial matters based on the "unfixed proposition that a . . . trial may occur in the future," *Wakefern Food*, 2002 U.S. Dist. LEXIS 12609, at *18, would complicate resolution of the Chapter 11 Cases and tax this Court's time. This would be especially wasteful if a settlement is reached before an estimation takes place—which is not just a possibility or probability, but the Movants' avowed goal. *See* A0011 (Tr. of Omnibus Hr'g at 11:12–25 (Feb. 17, 2021) ("[A]s I reported in November, it is still the debtor's intention to emerge from Chapter 11 by the end of summer 2021[.]")); A0347 (Tr. of Status Conf. Hr'g at 12:10–11 (Apr. 12, 2021)).

After resolution of all pre-trial matters by the Bankruptcy Court, the estimation could proceed to hearing in a number of ways, whether before the Bankruptcy Court with proposed

findings of fact and conclusions of law, before this Court directly, or through a joint hearing if that would be efficient. *See In re Mercury Fin. Co.*, 249 B.R. 490, 494 (Bankr. N.D. Ill. 2000) (where securities fraud claimant "questioned the [Bankruptcy] Court's jurisdiction," on the bankruptcy court's recommendation, "[t]he District Court and the Bankruptcy Court held a joint session wherein the District Court ruled on class certification and settlement and the Bankruptcy Court ruled on the disclosure statement and the plan of reorganization"). But there is simply no need to decide amongst those options now. Especially where that decision may well prove moot.

### 2. In Keeping with 'Historical Practice' in Such Cases, the Motion Should Now Be Denied Without Prejudice

There is no need for a decision on withdrawal at this time, even if some day there may be. *See Gecker v. Marathon Fin. Ins. Co.*, 391 B.R. 613, 616 (N.D. Ill. 2008) (a motion to withdraw the reference is not a "one-time, up-or-down matter"). At best for Movants, then, the Motion should be denied without prejudice, in keeping with this Court's "historical practice." *Order Denying Motions for Withdrawal of Reference*, *Maxus Liquidating Tr. v. YPF S.A.*, No. 1:19-cv-01073-RGA (D. Del. Mar. 23, 2020) (Andrews, J.) (while it "may be that . . . the reference will eventually have to be withdrawn, . . . there is no reason why it has to be withdrawn now" and that "this manner of handling motions for withdrawal of reference is this Court's historical practice"); *KB Toys, Inc. v. Upper Deck Co.*, 2006 U.S. Dist. LEXIS 48703, at *5–6 (D. Del. July 17, 2006) (denying withdrawal without prejudice after finding movant's "assertion of their right to a jury trial [as] sufficient cause for immediate removal" was "not supported by logic or the case law in this district").

### IV. <u>CONCLUSION</u>

For the reasons set forth above, the Debtors request that the Court deny the Motion, that the reference not be withdrawn, and for any such other relief as may be just and proper.

Dated: April 15, 2021
Wilmington, Delaware

Respectfully submitted,

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

/s/ Paige N. Topper

Derek C. Abbott (No. 3376)
Andrew R. Remming (No. 5120)
Eric W. Moats (No. 6441)
Paige N. Topper (No. 6470)
1201 North Market Street, 16th Floor
P.O. Box 1347
Wilmington, Delaware 19899-1347
Telephone: (302) 658-9200
Email: dabbott@morrisnichols.com
aremming@morrisnichols.com
emoats@morrisnichols.com
ptopper@morrisnichols.com

and –

WHITE & CASE LLP
Jessica C. Lauria (admitted *pro hac vice*)
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 819-8200
Email: jessica.lauria@whitecase.com

– and –

WHITE & CASE LLP
Michael C. Andolina (admitted *pro hac vice*)
Matthew E. Linder (admitted *pro hac vice*)
Laura E. Baccash (admitted *pro hac vice*)
Blair M. Warner (admitted *pro hac vice*)
111 South Wacker Drive
Chicago, Illinois 60606
Telephone: (312) 881-5400
Email: mandolina@whitecase.com
mlinder@whitecase.com
laura.baccash@whitecase.com
blair.warner@whitecase.com

ATTORNEYS FOR THE DEBTORS AND
DEBTORS IN POSSESSION