IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| Future Claimants' Representative, et al.,<br><br>Petitioners,<br>v.<br><br>Boy Scouts of America and Delaware BSA, LLC,<br><br>Respondents. | Civil Action No. 21-392-UNA<br><br>Bankruptcy Case No. 20-10343 (LSS) |

**CENTURY'S OPPOSITION TO MOTION OF THE COALITION, TCC AND FCR
TO WITHDRAW THE REFERENCE OF PROCEEDINGS
<u>INVOLVING THE ESTIMATION OF PERSONAL INJURY CLAIMS</u>**

Century Indemnity Company, as successor to CCI Insurance Company, as successor to Insurance Company of North America ("**Century**"), hereby files this opposition to the *Motion of the Future Claimants' Representative, the Official Committee of Tort Claimants, and the Coalition of Abused Scouts for Justice for Entry of an Order, Pursuant to 28 U.S.C. § 157(d) and Bankruptcy Rule 5011(a), Withdrawing the Reference of Proceedings Involving the Estimation of Personal Injury Claims*, filed on March 17, 2021 [D.I. 2399] (the "**<u>Motion</u>**"):

<u>Preliminary Statement</u>

1. The plaintiff lawyers who are behind the estimation motion disclosed to Judge Silverstein on March 17 their intent to file a motion to withdraw the reference. The motion could have been filed last year if it was well founded. It was not. Getting to the heart of what this is about, BSA's counsel explained to the Court that the plaintiffs' estimation motion proposes a 111-day discovery and litigation schedule that "conveniently expires right at the debtor's statutory exclusivity period," when the Debtors would lose their exclusive right to propose a Chapter 11 plan (11 U.S.C. § 1121). Tr. Mar. 17 Hearing at 46 (Ms. Lauria, counsel for BSA). Judge Silverstein's reaction was predictable and is set out in the transcript. *Id*. at 30, 49.

1

2. Movants' Motion is fundamentally legally flawed, driven by illegitimate motives and should be denied for three reasons.

3. First, whereas here, a motion to withdraw the reference is filed for tactical reasons, 28 U.S.C. § 157(d) allows for dismissal as "withdrawal provisions should not be allowed to be used by any party for purposes of delay." *In re Stavriotis*, 111 B.R. 154, 157–58 (N.D.Ill.1990). The Motion is nothing but a pure tactical ploy designed to leverage the Debtors, cause undue delay, and run out the clock on Century's pending motions Rule 2004 seeking discovery into how the proofs of claims were generated by for profit claim aggregators.

4. Second, although Movants invoke Section 502(c) of the Bankruptcy Code for the relief that they will seek if the Motion is granted, the "estimation" they seek has no basis in that provision. The relief that the Movants will seek if the Motion is granted does not ask this Court to estimate any individual "claim"; the proposed "estimation" is not "for purpose of allowance" of any claim; and the Motion does not suggest that any claim must be estimated now to avoid "undu[e] delay [in] the administration of the case." 11 U.S.C. § 502(c). To the contrary, Movants contend that, in their view, individual Abuse Claims can and should be liquidated post-confirmation by a plaintiff controlled trust without any review by this Court or any other. The estimation that is the subject of the motion to withdrawal does not satisfy any, let alone all, of the requirements for an estimation under Section 502(c). For that reason alone, it should be denied.

5. The relief that will be sought should the Motion be granted is also wholly outside the authority of this Court to grant. In seeking to estimate the whole case value of the claims, the Movants hope to estimate not just the liability of the Debtors but also the liability of the non-debtor Local Councils and Sponsoring Organizations for the Abuse Claims. Nothing in Section 502(c) authorizes a bankruptcy court to estimate the liabilities of non-debtors. Nor does this

Court have a jurisdictional basis to issue such relief with regard to a non-debtor. For this reason too, the Motion should be denied.

6. Third, notwithstanding Movants' dilatory and obstructive motives for filing the Motion, Movants' ultimate request would require this Court to undertake an unprecedented estimation proceeding to determine the aggregate liability in a sexual abuse case—something that has never been done before in the history of US jurisprudence. The only reported case that has even considered such an estimation squarely rejected it. *See In re Roman Catholic Archbishop of Portland in Oregon*, 339 B.R. 215 (Bankr. D. Or. 2006). This Court should deny the Motion.

## ARGUMENT

I. **THE COURT SHOULD DENY THE MOTION TO WITHDRAW THE REFERENCE**

   A. **Movants' Motion Is a Transparent Tactical Ploy**

7. Movants' Motion is nothing short of a pure tactical ploy designed to wreak havoc on the bankruptcy proceedings, cause undue delay, and disrupt the Debtors' attempts at plan confirmation. The Third Circuit has described several factors courts consider when deciding whether cause exists to withdraw the reference, including "reducing forum shopping and confusion" and "expediting the bankruptcy process," neither of which apply here. *See In re Pruitt*, 910 F.2d 1160, 1171 (3d Cir. 1990).

8. On the other hand, courts commonly deny motions to withdraw the reference where the movant files the motion for tactical reasons, such as to delay. *See, e.g.*, *In re AgFeed USA, LLC*, 565 B.R. 556, 565–66 (D. Del. 2016) (denying motion to withdraw based on a "consideration of all of the appropriate factors," and explaining that "[t]he purpose of the timeliness provision [in § 157(d)] is to prevent unnecessary delay and stalling tactics."); *In re Nortel Networks, Inc.*, 539 B.R. 704, 710 (D. Del. 2015) (denying withdrawal based on

"consideration of all of the appropriate factors," including "[t]he resulting delay associated with [the District Court] familiarizing itself with [the] issues"). Indeed, "[d]elay for tactical reasons," including that "which prejudices the opposing party or the administration of justice, can be grounds for denying a withdrawal motion." *In re FMI Forwarding Co.*, 2005 WL 147298 at *6-7 (S.D.N.Y. Jan. 24, 2005) (denying motion to withdraw the reference because "the only reason" defendant "fil[ed] its withdrawal motion when it did was to stay the Bankruptcy Court's ruling on Plaintiff's … motion and instead require this Court to rule on essentially the same question."); *see also In re New York Trap Rock Corp.*, 158 B.R. 574, 577 (S.D.N.Y. 1993) (denying motion to withdraw the reference where the timing of the motion—filed shortly after the court made findings adverse to the movant—indicated forum shopping).

9. It defies logic to envision a scenario in which this Court could litigate the more than 100,000 Abuse Claims within 111 days. Yet, that is the Movants' proposed timeline for estimation, which BSA's counsel and Judge Silverstein recognized as "conveniently expir[ing] right at the debtor's statutory exclusivity period" for proposing a Chapter 11 plan. *See* 03/17/21 Hr'g Tr. at 46. Movants even admitted on the record that their proposed timeline is "very aggressive" and ultimately "will be subject to the court's availability." *Id.* at 29, 34.

10. This Court should not condone such tactical maneuvering, since section 157(d)'s "withdrawal provisions should not be allowed to be used by any party for purposes of delay." *In re Stavriotis*, 111 B.R. 154, 157–58 (N.D.Ill.1990) (denying motion to withdraw the reference where the movant filed the motion not "as soon as possible after [it] learned that federal laws might be implicated in the action before the bankruptcy court (late 1988), but rather when it learned that it might have something to gain from withdrawal (May, 1989)").

11. Granting withdrawal would allow the Movants "to pervert and abuse the right

extended to [them] at the cost to the other party of unnecessary expense and labor and to the public of the unnecessary disruption of the conduct of the courts." *In re Georgio*, 50 B.R. 327, 329 (D. R.I. 1985) (quoting *Chafin v. United States*, 5 F.2d 592, 595 (4th Cir. 1925)). Congress sought to prevent this very outcome. *See In re Pruitt*, 910 F.2d 1160, 1170 (3d Cir. 1990) (quoting 130 Cong.Rec. S6081 (daily ed. June 19, 1984) (remarks of Sen. DeConcini)) (explaining that "[t]he district court should refuse withdrawal if withdrawal would unduly delay administration of the case, considering the status of the case, the importance of the proceeding to the case, and the relative caseloads of the district court and bankruptcy judge.").

12. This Court should deny the motion. *See Georgio*, 50 B.R. at 329 (explaining that the statute is designed "to prevent unnecessary delay and the use of stalling tactics."); *see also In re Allegheny Health Educ. & Research Foundation*, 2006 WL 3843572, at *2 (W.D. Pa. Dec. 19, 2006) (quoting 130 Cong. Rec. S7621) ("A motion for withdrawal of reference should not be used by any party for the purpose of delay.").

### B. Movants' Request to Withdraw the Reference Fails as a Matter of Law

#### 1. There Is No Basis To Estimate The Abuse Claims Under Section 502(c) Of The Bankruptcy Code

13. The Movants base the relief that they will seek if their Motion is granted on Section 502(c) of the Bankruptcy Code, claiming that estimation is "mandatory" under that provision. *See* Mot. at 10-11. To the contrary, none of Section 502(c)'s requirements for estimation is met here.

14. Section 502(c) provides:

> There shall be estimated *for purpose of allowance under this section* … any contingent or unliquidated *claim*, the fixing or liquidation of which, as the case may be, would *unduly delay the administration of the case*.

11 U.S.C. § 502(c) (emphasis added). Like all statutes, the Bankruptcy Code must be construed to mean what its plain language says. *See, e.g.*, *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241 (1989) (when construing the Bankruptcy Code, "where … the statute's language is plain, the sole function of the courts is to enforce it according to its terms") (internal quotation marks omitted). Under the plain language of Section 502(c), the Court may estimate a claim only if three requirements are met.

15. First, Section 502(c) provides for the estimation only of a "contingent or unliquidated *claim*." The estimation thus must determine the amount of an individual claim or group of related claims, not a debtor's aggregate liability for all mass-tort claims alleged against it. *See, e.g.*, *Bittner v. Borne Chem. Co.*, 691 F.2d 134, 135-137 (3d Cir. 1982) (affirming order estimating the allowed amount of a single unliquidated tort claim). That point is even clearer given the statute's additional requirement that the estimation must be "for purpose of allowance." Claims are not allowed *en masse*, but individually. *See* 11 U.S.C. § 502(b).

16. Second, as noted, the estimation must be "for purpose of allowance under this section." That is, the estimation's purpose must be to determine whether a particular claim is allowed under Section 502 (for distribution or plan voting purposes), and if so, the allowed amount of that claim. *Cf.* 11 U.S.C. § 502(e)(2) (referring to claims "allowed under subsection (a), (b), *or (c)* of this section") (emphasis added); *accord id.* § 502(f)-(i). As this Court has explained, because "section 502(c) … requires that the court estimate [an unliquidated claim] 'for purpose of allowance under this section,'" "estimation under section 502(c) results in allowing a claim for purposes of the entire case, and is no different than a claim allowed under section 502(a) or (b)." *In re Pacific Sunwear of California, Inc.*, No. 16-10882, 2016 WL 4250681, at *3 (Bankr. D. Del. Aug. 8, 2016) (Silverstein, J.); *see also In re Stone Hedge Props.*, 191 B.R. 59, 63-64

(Bankr. M.D. Pa. 1995) ("estimation … under 11 U.S.C. § 502(c) … appears to confine itself to 'contingent or unliquidated' claims for distribution purposes").

17. Third, Section 502(c) permits the estimation of a contingent or unliquidated claim only if "the fixing or liquidation" of the claim through the normal claims-allowance process under Section 502(a)-(b) of the Bankruptcy Code (or in the tort system) "would unduly delay the administration of the case." *See, e.g.*, *Kool, Mann, Coffee & Co. v. Coffey*, 300 F.3d 340, 357 (3d Cir. 2002) (affirming denial of Section 502(c) estimation of creditor's claim because adjudicating the claim's allowance under Section 502(b) would not delay the case). "Something is 'undue' if it is 'unjustifiable.' Inquiry into whether liquidating the tort claims would be unjust, due to any case delay that may result therefrom, dictates that the Court perform a kind of cost-benefit analysis by considering the time, costs and benefits associated with both estimation and liquidation." *In re Dow Corning Corp.*, 211 B.R. 545, 563 (Bankr. E.D. Mich. 1997) (citation omitted). When "there is no reason to believe that estimation would result in a faster distribution of proceeds to tort claimants," the court should not order estimation. *Id.* at 565.

18. By Movants' own admission, *none* of those three requirements is met here. As the Motion states:

> Estimation of aggregate liability will *not* determine the liquidated amount of any particular individual claim. The plan contemplated by the Movants will likely provide that such individual amounts will be determined through trust distribution procedures (the "TDP") or through release of actions into the tort system as permitted by the TDP.

Mot. 1 n.3 (emphasis added).

19. Thus, Movants are not asking the Court to estimate the amount of any individual "claim," as Section 502(c) provides, but rather to estimate the Debtors' aggregate liability for tens of thousands of Abuse Claims. Nor are Movants asking the Court to estimate any individual Abuse Claim "for purpose of allowance under [Section 502]." To the contrary, they do not want

7

this Court (or any other) to consider the bona fides of any Abuse Claim; they assert that the allowance and liquidation of individual Abuse Claims should occur entirely outside any judicial scrutiny, pursuant to a separate post-confirmation process administered by a plaintiff controlled trust.

20. Because the relief that will be sought if the Motion is granted fails to satisfy *any* of the three requirements for estimation, it must be denied. *Dow Corning* is instructive. There, as here, the movants argued that an estimation of the debtor's aggregate mass-tort liability was necessary to determine whether a plan was feasible and to help bridge the parties' differences over a plan that faced significant opposition. *See Dow*, 211 B.R. at 554-556, 562. But the bankruptcy court denied the estimation motions. It explained that "bankruptcy law's general rule is to liquidate, not to estimate," and that "[t]here are good reasons to liquidate" rather than "estimate" unliquidated claims because of "the very real concern that the estimates may prove to be inaccurate." *Id.* at 563. Thus, estimation is permitted under Section 502(c) only if "the party moving for estimation … show[s] that the normal mode of liquidating the claim would create undue delay in the bankruptcy process." *Id.* at 573. The court concluded that the movants had failed to show any "undue" delay because—just as in this case—"individual tort claims would … be liquidated" after "a plan of reorganization is confirmed" pursuant to a "post-confirmation liquidation [process for the] tort claims." *Id.* at 565-566, 574. And the court observed that the notion that an estimation would facilitate consensus around a plan was fanciful: "[N]o matter what answer this Court were to give as its estimate of the value of all tort claims, there is almost no likelihood that the estimate would prove accurate"; "[t]herefore, parties in interest will derive no comfort from the results of a lengthy and complex estimation war." *Id.* at 567. Thus, far from avoiding "undue delay," a lengthy pre-confirmation estimation battle "would only lengthen the

8

time to distribution since funds would not be disbursed until claims are liquidated post-confirmation." *Id.* at 565.

21. The same is true here. There is simply no basis under Section 502(c) to conduct an "estimation" of the Abuse Claims that does not seek to estimate the amount of any individual "claim" (but rather the Debtors' "aggregate liability"); that is not for the "purpose of allowance" of any particular Abuse Claim; and that is wholly unnecessary to avoid any "undue delay" in the case, given that Movants themselves contemplate that individual Abuse Claims will be liquidated post-confirmation outside the bankruptcy process.

### 2. Movants Improperly Seek to Estimate Claims Against Non-Debtors

22. Movants' Motion is also legally defective insofar as Movants request the estimation of non-debtor liabilities. The Abuse Claims here give rise in various instances to claims against the Debtors and a range of non-Debtors. The Movants seek a whole case valuation of the Abuse Claims against whoever they may be asserted. Sometimes the liabilities may overlap but other times they may not. For example, at least two of the members of the Official Committee of Tort Claimants settled and were paid for their Abuse Claims by non-debtors prepetition but nonetheless were seated as member of the Committee.

23. Evaluating Abuse Claimants' potential state-law claims against **non-debtors**, including the liability of the non-debtor Local Councils and Sponsoring Organizations does not under any circumstance fall within the meaning of estimation under Section 502(c). Nor does the Court have jurisdiction to estimate the liability of non-debtors in these circumstances.

24. Under section 502(c), the Court can evaluate and estimate claims against the Debtors for purposes of allowance; it is not empowered to estimate claims of non-debtors. *See In re Fed.-Mogul Glob., Inc.*, 330 B.R. 133, 154 (D. Del. 2005) ("Section 502(c) only speaks of estimating claims for the purpose of allowance."); *Matter of Interco Inc.*, 137 B.R. 993, 998

(Bankr. E.D. Mo. 1992) ("A bankruptcy court is to estimate any contingent or unliquidated claims for the purpose of *allowance* in a bankruptcy case.") (emphasis added). When contemplating the allowance of claims under the Bankruptcy Code, it is only relevant in the context of claims against the debtor. *See* 11 U.S.C. § 502(b) (the court will allow a claim except to the extent "such claim is unenforceable against the debtor and property of the debtor"). An allowed claim is one "that may share in the assets of the bankruptcy estate." *See Interco*, 137 B.R. at 999. Section 502(c) does not confer authority to estimate value of claims for non-debtors.

25. Moreover, it is important to consider the context in which courts estimate claims, typically for feasibility, distribution, and voting on a plan. *See, e.g.*, *In re Pacific Gas & Electric Company*, 295 B.R. 635, 642 (Bankr. N.D. Cal. 2003) (estimating claims for purposes of voting on a plan and feasibility); *In re Pizza of Hawaii, Inc.*, 761 F.2d 1374, 1382 (9th Cir. 1985) (estimation necessary for a determination of plan feasibility); *In re Trident Shipworks, Inc.*, 247 B.R. 513, 514 (Bankr. M.D. Fla. 2000) (estimating claims for voting and distribution purposes). For each of these purposes, courts only examine the claims against the debtors, and any purported value of claims against non-debtors is not encompassed in those issues.

   3. **Movants Do Not Seek the Liquidation or Estimation of a Particular Personal Injury Claim "for Purposes of Distribution"**

26. The Movants do not seek the liquidation or estimation of a particular personal injury claim "for purposes of distribution"—*i.e.*, to fix the amount of an individual personal injury claim for purposes of determining what share of the bankruptcy estate will be distributed, or paid, on that particular claim. *See, e.g.*, *In re G-I Holdings, Inc.*, 295 B.R. 211, 218-20 & n.5 (D.N.J. 2003) (explaining that the exception does not apply to an estimation of a debtor's aggregate tort liability but rather only to proceedings "to estimate the value of *individual* [personal injury] claims" in a manner that "results in an effective *liquidation* of those claims") (emphasis added);

*In re G-I Holdings, Inc.*, 323 B.R. 583, 597, 611 (Bankr. D.N.J. 2005) (concluding that the exception applies only where movant seeks to "estimate each individual claim against [the debtor] one by one" "with the intended goal of liquidating contingent or unliquidated personal injury tort … claims against the estate *for distributional purposes*") (emphasis added).

        **C.**        **Movants Ask This Court to Do Something That Has Never Been Done**

        27.        The Court should dismiss Movants' Motion because even if it is granted, the requested relief—holding estimation proceedings to determine the aggregate liability of sexual abuse claims—is entirely improper, contrary to the Bankruptcy Code, and frankly unprecedented in U.S. jurisprudence history.

        28.        Movants' Motion and Estimation Motion are entirely devoid of any support for holding estimation proceedings to determine the aggregate liability in of thousands of alleged abuse claims. The one abuse case that Movants did cite squarely contradicts their position. In *In re Roman Catholic Archbishop of Portland in Oregon*, 339 B.R. 215 (Bankr. D. Or. 2006), the court concluded that the debtor intended to "estimate in the aggregate the amounts of the present child sexual abuse claims" and that its true motive was to use estimation "to put an upper limit on all tort claims, while discharging any actual liability in excess of the estimated amount." *See id.* at 221. The court found fundamental flaws in an aggregate value estimation for purposes of distribution. *See id.* at 224. ("A claimant's right to a remedy for tortious behavior could be substantially and irreversibly affected by the estimation, where estimation is being used to establish a cap on the fund that will be available to pay liquidated claims."). Thus, the court did not endorse the Movants' request for an estimation of the aggregate value of sexual abuse claims. *See id.* (noting that the "consequences of estimation for purposes of voting and confirmation issues only are ***much less drastic*** than of estimation for purposes of distribution." (emphasis

11

added)).[1]

29.     Movants are proposing precisely what was rejected by the *Archbishop of Portland* court—an estimation that "will be binding on all parties and set a de facto cap on the Debtors' liability with respect to the estimated claims, in that the estimation will establish the maximum amount that the BSA and beneficiaries of any channeling injunction must make available for distribution to abuse claimants." Mot. at 9.

30.     Furthermore, the Movants' proposed estimation procedures would strip the due process rights of the insurers and all other parties. Their proposed violation of parties' constitutional rights further demonstrates why the Court must reject the Estimation Motion. "[D]ue process likely requires an individualized estimation of claims, as opposed to the estimation process debtor proposes for present child sex abuse claims, which divides the claims into a few groups and uses the estimated amount for each claim in the given group." *In re Roman Catholic Archbishop of Portland in Oregon*, 339 B.R. at 223. Though the Oregon Bankruptcy Court did not believe that estimation automatically required "mini-trials for each claim," it urged that it would "explore with the parties methods for individualizing the estimation process." *Id.* (noting that selecting a methodology was "premature" but suggesting options such as appointing an expert and conducting advisory summary jury trials).

31.     *Archbishop of Portland*'s warning to engage in a more tailored assessment of claims is especially imperative here where there is an extraordinarily high number of claims and

---

[1] Recognizing the sparse case law on estimations for distribution purposes, one bankruptcy court observed that estimating sexual abuse claims would likely create "significant disputes concerning how it should be accomplished." *In re Roman Cath. Bishop of San Diego*, 374 B.R. 756, 760 (Bankr. S.D. Cal. 2007) ("The possibility of further appeals is also high since the Debtor's desired process will deprive plaintiffs of their Seventh Amendment right to a jury trial."). These concerns underscore that the Movants' proposal contradicts the Bankruptcy Code, which intended estimation to solve, not exacerbate, delays in the process.

significant variation in the monetary worth of each claim. Restricting BSA's total liability without taking an individualized look at the underlying claims would force the insurers to indemnify its policyholder for an aggregate estimate, rather than the true value of the underlying sexual abuse claims for which they are responsible. This would deprive the insurers, the underlying claimants, and all other parties of their due process rights.

## **Conclusion**

For the foregoing reasons, Century respectfully requests that the Court deny the Motion and enter such other relief as the Court deems proper.

Dated: April 15, 2021                               Respectfully Submitted,

                                                     By:  */s/ Stamatios Stamoulis*
                                                             Stamatios Stamoulis (#4606)

                                                     STAMOULIS & WEINBLATT LLC
                                                     800 N. West Street
                                                     Third Floor
                                                     Wilmington, Delaware 19801
                                                     Telephone:   302 999 1540
                                                     Facsimile:    302 762 1688

                                                     O'MELVENY & MYERS LLP
                                                     Tancred Schiavoni (*pro hac vice*)
                                                     Times Square Tower
                                                     7 Times Square
                                                     New York, New York 10036-6537
                                                     Telephone:   212 326 2000
                                                     Facsimile:    212 326 2061

                                                     *Counsel for Century Indemnity Company, as successor to CCI Insurance Company, as successor to Insurance Company of North America and Indemnity Insurance Company of North America, Westchester Fire Insurance Company and Westchester Surplus Lines Insurance Company*