IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re BOY SCOUTS OF AMERICA and DELAWARE BSA, LLC,<br><br>    Debtors.<br><br>——————————————————<br><br>FUTURE CLAIMANTS' REPRESENTATIVE, *et al.*,<br><br>    Petitioners,<br>v.<br><br>BOY SCOUTS OF AMERICA and DELAWARE BSA, LLC,<br><br>    Respondents. | Chapter 11<br>Bankr. Case No. 20-10343-LSS<br>(Jointly Administered)<br><br><br><br><br><br><br>Civil Action No. 21-392-RGA |

**MEMORANDUM**

Pending before the Court is the motion (D.I. 1) ("Motion for Leave") by the Future Claimants' Representative ("FCR"), the Official Committee of Tort Claimants ("TCC"), and the Coalition of Abused Scouts for Justice ("Coalition") (collectively, "Movants") seeking an order withdrawing the reference of a contested matter pending in the above-captioned chapter 11 cases, involving the estimation of certain personal injury tort claims. Having considered the papers filed in connection with the Motion for Leave, including the response of Certain Insurers (D.I. 14), the opposition filed by Boy Scouts of America and Delaware BSA, LLC (together "BSA"), and Movants' reply in further support of the Motion for Leave (D.I. 29), the Court will deny the Motion for Leave for the reasons set forth below.

**I.    BACKGROUND**

On February 18, 2020, BSA filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code with the stated goal of addressing liabilities arising from historical acts of sexual abuse which BSA could no longer address in the tort system on a case-by-case basis. (Bankr. D.I.

4 at 3-5).[1] BSA filed a plan that it asserted would provide holders of abuse claims with an equitable, streamlined, and certain process by which they may obtain compensation, by channeling the abuse claims asserted against the Debtors and certain other third parties—including the Local Councils, Contributing Chartered Organizations, and contributing insurers—to a settlement trust pursuant to § 105(a) of the Bankruptcy Code. Arguing that negotiations among key constituencies had stalled, on March 16, 2021, Movants filed a motion in the Bankruptcy Court (Bankr. D.I. 2391) ("Estimation Motion") seeking estimation of the aggregate liability, by year, for nearly 85,000 abuse claims asserted in the chapter 11 cases. Two days later, and before the Bankruptcy Court had any opportunity to consider the Estimation Motion, Movants filed the Motion for Leave seeking to withdraw the reference and arguing that this Court, rather than the Bankruptcy Court, should decide whether and how to estimate the aggregate amount of BSA's liability.

## II.   JURISDICTION AND APPLICABLE STANDARDS

District courts "have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b). Pursuant to the authority granted by 28 U.S.C. § 157(a), this Court refers cases arising under title 11 to the United States Bankruptcy Court for the District of Delaware. *See* Am. Standing Order of Reference, Feb. 29, 2012 (D.Del.). "The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown." 28 U.S.C. § 157(d). With respect to such permissive withdrawal, "[t]he 'cause shown' requirement in § 157(d) creates a presumption that Congress intended to have bankruptcy proceedings adjudicated in bankruptcy court unless rebutted by a contravening policy." *Hatzel & Buehler, Inc. v. Cent. Hudson Gas & Elec. Corp.*, 106 B.R. 367, 371 (D. Del. 1989) (internal quotations omitted).

---

[1] The docket of the Chapter 11 cases, captioned In re Boy Scots of America, No. 10343 (LSS) (Bankr. D. Del.), is cited herein as "Bankr. D.I. __."

To overcome that presumption, the moving party has the burden to prove that cause exists to withdraw the reference. *See In re NDEP Corp.*, 203 B.R. 905, 907 (D. Del. 1996).

Courts in the Third Circuit articulate a number of factors for the court to consider in assessing cause. One is "[w]hether the proceeding is core or non-core." *See In re G-I Holdings, Inc.*, 295 B.R. 211, 216 (D.N.J. 2003). Courts also apply the so-called "*Pruitt* factors," which ask whether withdrawal would "promot[e] uniformity in bankruptcy administration, reduc[e] forum shopping and confusion, foster[] the economical use of the debtors' and creditors' resources, and expedit[e] the bankruptcy process." *In re Pruitt*, 910 F.2d 1160, 1168 (3d Cir. 1990). The *Pruitt* factors are sometimes referred to as "minimum standards" because they were "not designed to be exhaustive." *NDEP Corp.*, 203 B.R. at 908–09 (listing other factors like the nature of the proceeding, judicial economy, and whether the parties have requested a jury trial). That is not to suggest that they set a low bar. Quite the opposite, cause to withdraw the reference "will be present in only a narrow set of circumstances." *Pruitt*, 910 F.2d at 1171.

## III.  DISCUSSION

The Motion for Leave criticizes the terms of the then-proposed plan of reorganization (*see* Bankr. D.I. 2293, 2294)—including the amount of funding for the proposed settlement trust and protections afforded to third parties—and argues that, after a year of stalled negotiations, an estimation proceeding is necessary to "move the process forward" and "make meaningful progress toward compensating the survivors." (D.I. 1 at 2). Following briefing and discovery, the Bankruptcy Court took the Estimation Motion under advisement at the May 19, 2021 hearing. (*See* Bankr. D.I. 4716). It appears that no ruling on the Estimation Motion has yet issued; rather, in the past few months, the Bankruptcy Court has overseen significant progress in the chapter 11 cases, including its appointment of a panel of mediators and referral of certain matters to mandatory mediation (Bankr. D.I. 812); BSA's proposal of a restructuring support agreement

3

(Bankr. D.I. 5466, 5887); ongoing mediation efforts, "involving at least thirty-four (34) Mediation Parties" including "in-person mediation sessions on August 3–5, 18–20 and 23–24," and continuing mediation sessions "held by videoconference and telephone on a near-daily basis," which have resulted in significant settlements with insurers and an agreement in principle among BSA, the FCR and the Coalition (two of the Movants here), and other key constituencies "on settlement terms that will result in an additional $1.037 billion of cash contributions to the Settlement Trust, in addition to the contributions of up to approximately $820 million that will be made by the Debtors and Local Councils" (Bankr. D.I. 6210 at 1-2). According to the Mediators' Sixth Report, filed on September 14, 2021, they "do not consider the Mediation to be closed," "the [M]ediation remains ongoing," and "the Mediators believe that it will likely lead to further settlements that maximize the value of the estates for the benefit of creditors." (*Id.* at 3). These efforts have resulted in extensive revisions to the proposed plan, including a fifth amended version and amended disclosure statement. (Bankr. D.I. 6429, 6431). On September 30, 2021, the Bankruptcy Court entered an order approving the amended disclosure statement and scheduling a plan confirmation hearing for January 24, 2022. (Bankr. D.I. 6438, 6443, 6445).

In light of the foregoing developments, it is unclear at this stage whether the relief sought in the Estimation Motion would help or hinder the hard fought progress that parties have made to date through their diligent mediation efforts. But even assuming that the relief sought in the Estimation Motion would move the reorganization forward, the Court must deny the Motion for Leave to withdraw the Estimation Motion because that matter is properly before the Bankruptcy Court and Movant has failed to demonstrate cause for permissive withdrawal of the reference.

Movants' argument for withdrawal of the reference turns on their proposition that the Estimation Motion is a non-core proceeding under 28 U.S.C. § 157(b)(2)(B), and that it would therefore be more efficient for this Court to hear the Estimation Motion in the first instance, rather

4

than to have the Bankruptcy Court submit proposed findings of fact and conclusions of law to this Court, subject to *de novo* review (*id.* §157(c)(1)). That argument fails because the premise is false: under the statute's express terms, the Estimation Motion is a core proceeding, and the Estimation Motion is therefore one that the Bankruptcy Court has authority to hear and determine. *Id.* § 157(b)(1). It would accordingly be more efficient for the Bankruptcy Court, which has been presiding over BSA's chapter 11 bankruptcy cases for more than eighteen months, to decide Movants' Estimation Motion and determine whether any estimation is appropriate.

Section 157 provides, "Core proceedings include …estimation of claims … for the purposes of confirming a plan under chapter 11." 28 U.S.C. § 157(b)(2)(B). Movants base their argument on an exception, which provides that core proceedings do not include the "liquidation or estimation of contingent or unliquidated personal injury tort or wrongful death claims against the estate for purposes of distribution in a case under title 11." *Id.* As Certain Insurers correctly argue, that exception does not apply here. As its plain language makes clear, the exception applies only to the liquidation or estimation of a particular personal injury claim "for purposes of distribution"—i.e., to fix the amount of an individual personal injury claim for purposes of determining the share of the bankruptcy estate that will be distributed, or paid, on that particular claim. *See, e.g., In re G-I Holdings, Inc.*, 295 B.R. 211, 218-220 & n.5 (D.N.J. 2003) (explaining that the exception does not apply to an estimation of a debtor's aggregate tort liability, but rather only to proceedings "to estimate the value of individual [personal injury] claims" in a manner that "results in an effective liquidation of those claims"); *In re G-I Holdings, Inc.*, 323 B.R. 583, 597, 611 (Bankr. D.N.J. 2005).

Core proceedings specifically include "estimation of claims and interests for purposes of confirming a plan." 28 U.S.C. § 157(b)(2)(B). Although "the liquidation or estimation of contingent or unliquidated personal injury tort or wrongful death claims against the estate for

5

purposes of distribution" are non-core proceedings, "for purposes of distribution" means that the proceeding must actually determine distributions on the claim. Movants concede that their requested estimation is needed for purposes of confirmation. (*See* D.I. 1 at 9; Estimation Motion at 7, 13). Movants argue it is also for distribution, "at least in part," because it is designed "to derive an aggregate value of the Abuse Claims that will, in turn, dictate the size at plan confirmation of any post-confirmation trust for making distributions to abuse survivors." (D.I. at 3, 8–9). But, as BSA correctly points out, that does not transform the confirmation-related proceedings into an "estimation . . . for purposes of distribution." Movants themselves make clear the estimation will neither determine claims allowance nor distribution amounts. (*See* D.I. 1 at 4 n.3; Estimation Motion at 1 n.3). Accordingly, the matter is a core proceeding, properly before the Bankruptcy Court.

As BSA points out, other mass tort cases, like *In re Eagle-Picher Indus.*, 1996 U.S. Dist. LEXIS 22742, at *15 (S.D. Ohio Sep. 25, 1996), illustrate this point. In affirming the bankruptcy court's ruling that the proposed estimation proceeding was core, the district court reasoned that the estimation did not (1) determine the claim of any individual tort victim, (2) determine the merits of any individual asbestos claim, (3) foreclose any state law defenses, or (4) establish the amounts to be distributed to individual asbestos claimants. *Id.* at *17–18. Moreover, the district court noted that the determination of whether a claimant would recover on a claim and the amount of any recovery would be made pursuant to the confirmed plan's trust distribution procedures. *Id.* at *18. Thus, the district court held that estimation facilitated the confirmation of a plan, since the purpose of the estimation "[was] not to make distributions to asbestos claimants but to permit the formulation of a feasible plan." *Id.* at *18–19.

In support of Movants' argument that estimation here will serve the purposes of distribution, they cite *In re Dow Corning Corp.*, 211 B.R. 545, 569 (Bankr. E.D. Mich. 1997). In

6

that case, the bankruptcy court observed in dicta that estimation of personal injury claims for purposes of confirmation could theoretically "create the result that the estimation was for purposes of distribution as well"—before denying both of the estimation motions before it. Movants also cite *In re Roman Catholic Archbishop of Portland*, 339 B.R. 215, 219–20 (Bankr. D. Or. 2006). In that case, the bankruptcy court held that an estimation proposed by the debtor was for purposes of distribution because it would decide the amount to be set aside for payment of tort claims, which the debtor's plan required be paid in full; thus, if the estimation turned out to be too low, insufficient amounts would remain for claimants, effectively limiting their rightful distributions. *Id.* As BSA points out, each of these cases is distinguishable. The Estimation Motion here would not decide what actually gets contributed to the settlement trust, the corpus of which is to be comprised of various assets contributed by different parties, including insurance rights; the proposed plan also includes no right to payment in full for abuse claims. "[T]he question of whether an estimation of aggregate liability is for purposes of distribution must be determined on a case-by-case basis," *Eagle-Picher*, 1996 U.S. Dist. LEXIS 22742 at *15, and other courts have rejected the idea that estimation to help inform the size of the Debtors' liabilities is "for purposes of distribution." *See, e.g., A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 1012 (4th Cir. 1986) ("estimations of the debtors' potential personal injury tort liabilities as an incident of the development of a plan of reorganization are core proceedings within the bankruptcy court's jurisdiction").

Finally, Movants argue that the Court should withdraw the reference because the Bankruptcy Court lacks the authority to try the abuse claims under 28 U.S.C. § 157(b)(5), which provides that the "district court shall order that personal injury tort and wrongful death claims shall be tried in the district court." Accordingly, Movants argue, the Estimation Motion must proceed in this Court. (D.I. 1 at 14-15). But the Estimation Motion does not ask that any court

7

"try" any abuse claims. As Movants admit, their requested "[e]stimation of aggregate liability is not intended to ... determine the liquidated amount of a particular individual claim." (*Id*. at 4 n.3). Rather, "such individual amounts will be determined through a yet unfiled set of trust distribution procedures ... or through release of actions into the tort system for adjudication as permitted by the [Trust Distribution Procedures]." (*Id*). It is in those proceedings, such as an "action[] in[] the tort system" to "adjudicat[e]" "the liquidated amount of a particular individual claim," *id.*, where any such abuse claim will be "tried"—not in the proceedings to estimate the Debtors' aggregate liability at issue here. Under these circumstances, § 157(b)(5) does not apply.

## IV. CONCLUSION

The Estimation Motion is a "core" proceeding under § 157(b)(2)(B) and falls outside the "non-core" exception for an estimation "for purposes of distribution." As such, the Bankruptcy Court can conduct any estimation it deems appropriate, and the reference need not be withdrawn. Accordingly, the Court will deny the Motion for Leave.

A separate order will be entered.

October 13, 2021

/s/ Richard G. Andrews
United States District Judge